JOHN A. SHOPE (admitted *pro hac vice*)
KEVIN J. CONROY (admitted *pro hac vice*)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
jshope@foleyhoag.com
kjconroy@foleyhoag.com

DAVID M. GOLDSTEIN (State Bar No. 142334)
DAVID C. BROWNSTEIN (State Bar No. 141929)
CHARLES R. JAEGER (State Bar No. 171039)
**FARMER BROWNSTEIN JAEGER & GOLDSTEIN LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 795-2050
Facsimile: (415) 520-5678
dgoldstein@fbj-law.com
dbrownstein@fbj-law.com
cjaeger@fbj-law.com

Attorneys for Defendant
ZUMPER, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| LUIS ARMANDO GONZALEZ-TORRES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUMPER, INC.,<br><br>Defendant. | Case No. 4:19-cv-2183-PJH<br><br><u>PROPOSED CLASS ACTION</u><br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**Hearing Date and Time:**<br>**Date:** September 18, 2019<br>**Time:** 9:00 a.m.<br>**Courtroom:** 3<br><br>**Complaint Filed:** April 23, 2019<br>**Trial Date:  None** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 4

   I.    THE PLAINTIFF UNDISPUTEDLY AGREED TO ARBITRATE. ............................... 4

   A.    THE OPERATIVE FACTS ARE UNDISPUTED. ........................................................ 4

   B.    GONZALEZ-TORRES' ARGUMENTS BASED ON THE UNDISPUTED FACTS ARE MERITLESS. ................................................................................. 5

       1.    Any choice not to click on the hyperlinked terms and conditions does not negate the making of the contract. ........................................................................ 5

       2.    The caption of the terms does not negate the making of the agreement. ............... 6

       3.    Gonzalez-Torres' agreement to additional terms specific to his order of a credit report does not negate his agreement to arbitrate. ....................................... 7

   II.   PLAINTIFF'S AGREEMENT TO ARBITRATE WAS NOT UNCONSCIONABLE. ........................................................................................................ 9

   A.    GONZALEZ-TORRES BEARS THE BURDEN TO PROVE PROCEDURAL AND SUBSTANTIVE UNCONSCIONABILITY. ........................................................... 9

   B.    THERE WAS NO PROCEDURAL UNCONSCIONABILITY. ...................................... 9

       1.    There was no unconscionable use of a contract of adhesion. ................................. 9

       2.    Gonzalez-Torres' other procedural objections are unsupported makeweights. ............................................................................................................ 10

   C.    THE AGREEMENT IS NOT SUBSTANTIVELY UNCONSCIONABLE. .................... 12

       1.    The agreement does not eliminate any public injunction remedy. ........................ 12

       2.    The intellectual property injunction exception does not invalidate the arbitration clause. ................................................................................................... 12

       3.    The limitations on damages are subject to legal exceptions and do not relate to the arbitral process. .................................................................................. 13

   III.   THE ARBITRATOR MUST DETERMINE WHETHER HE OR SHE IS AUTHORIZED TO ISSUE PUBLIC INJUNCTIVE RELIEF, WHETHER IT IS AVAILABLE, AND IF SO WHETHER IT IS WARRANTED. ...................................... 14

Conclusion ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................................................... 9

*Baltazar v. Forever 21, Inc.*,
    62 Cal. 4th 1237 (2016) ........................................................................................ 10, 12

*Blair v. Rent-A-Center, Inc.*,
    928 F.3d 819 (9th Cir. 2019) ..................................................................................... 15

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ................................................................................... 15

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)................................................................................................... 14

*Chavarria v. Ralphs Grocery Co.*,
    733 F.3d 916 (9th Cir. 2013) ..................................................................................... 10

*Cisneros v. Am. Gen. Fin. Services, Inc.*,
    2012 U.S. Dist. LEXIS 102948 (N.D. Cal. July 24, 2012)....................................... 11

*Colvin v. NASDAQ OMX Grp., Inc.*,
    2015 U.S. Dist. LEXIS 149932 (N.D. Cal. Nov. 4, 2015)......................................... 11

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ....................................................................... 15

*Devries v. Experian Info. Sols., Inc.*,
    2017 U.S. Dist. LEXIS 84255 (N.D. Cal. June 1, 2017) .......................................... 15

*Dornaus v. Best Buy Co., Inc.*,
    2019 U.S. Dist. LEXIS 24522 (N.D. Cal. February 14, 2019) ........................... 14, 15

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................................................................... 6

*Loewen v. Lyft, Inc.*,
    2015 U.S. Dist. LEXIS 191445 (N.D. Cal. Jun 12, 2015).......................................... 4

*Magana v. DoorDash, Inc.*,
    343 F. Supp. 3d 891 (N.D. Cal. 2018) ....................................................................... 14

*Maganallez v. Hilltop Lending Corp.*,
    505 F. Supp. 2d 594 (N.D. Cal. 2007) ......................................................................... 7

*Mance v. Mercedes-Benz USA*,
   901 F. Supp. 2d 1147 (N.D. Cal. 2012) .................................................................................. 9

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ..................................................................................................... 6

*Nicosia v. Amazon.com, Inc.*,
   2019 U.S. Dist. LEXIS 100162 (E.D.N.Y. June 14, 2019) ..................................................... 7

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................................ 6

*Nygaard v. Prop. Damage Appraisers, Inc.*,
   2019 U.S. App. LEXIS 23586 (9th Cir. Aug. 7, 2019) ........................................................... 7

*Pereyra v. Guaranteed Rate Co.*,
   2019 U.S. Dist. LEXIS 108940 (N.D. Cal. June 28, 2019) ................................................... 12

*Pierson v. Helmerich & Payne Internat. Drilling Co.*,
   4 Cal. App. 5th 608 (2016) ..................................................................................................... 7

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) .......................................................................................... 9, 10

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ................................................................................................................ 14

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) ..................................................................................................... 9, 11

*Selden v. Airbnb, Inc.*,
   2016 U.S. Dist. LEXIS 150863 (D.D.C. Nov. 1, 2016) ......................................................... 6

*Soto v. State Indus. Prods., Inc.*,
   642 F.3d 67 (1st Cir. 2011) ................................................................................................... 13

*Southeastern Stud & Components, Inc. v. American Eagle*,
   588 F.3d 963 (8th Cir. 2009) ................................................................................................ 13

*Stiener v. Apple Computer, Inc.*,
   556 F. Supp. 2d 1016 (N.D. Cal. 2008) ................................................................................ 10

*THI of N.M. at Hobbs Ctr., LLC v. Patton*,
   741 F.3d 1162 (10th Cir. 2014) ............................................................................................ 13

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ........................................................................................ 12, 14

*Vargas v. Delivery Outsourcing, LLC*,
   2016 U.S. Dist. LEXIS 32634 (N.D. Cal. Mar. 14, 2016) .................................................... 11

iii

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**Introduction**

Defendant Zumper, Inc. respectfully submits this memorandum in reply to plaintiff Luis Armando Gonzalez-Torres' opposition to Zumper's motion to compel arbitration and to stay (Dkt. #32). The motion should be granted because Gonzalez-Torres has not disputed the facts that he created a Zumper account by clicking a button on the company's website directly above language noting that doing so indicated agreement to Zumper's hyperlinked terms and conditions, and that those terms included a broad arbitration clause covering this dispute.

Rather than disputing these facts, Gonzalez-Torres tries to assert that there was no "meeting of the minds" because, although referring to itself also as "terms and conditions," the hyperlinked agreement bore the title "Terms of Use." Gonzalez-Torres also asserts that he should not be bound to those general terms because he separately agreed to additional terms and conditions relating specifically to his optional order of a credit report, but nothing in those additional terms purports to amend or supersede the general agreement that he had made when he created his Zumper account. The general terms including the arbitration clause were undisputedly hyperlinked not only in the specific disclosure when he created his account, but also at the bottom of every page on the Zumper website. Gonzalez-Torres makes no claim that he was actually confused, and his *post hoc* pettifogging ignores both the context and flow of his transactions in defiance of common sense and the settled law cited by Zumper in its opening brief. This point is amplified by Gonzalez-Torres' undisputed repeat visits to the Zumper site over several months, when he was reminded at least once that he had created an account and that by doing so he had agreed to Zumper's hyperlinked terms, but he nonetheless continued to use the site to apply for rentals and order credit reports. Gonzalez-Torres ignores these latter facts.

Gonzalez-Torres further attacks his agreement as both procedurally and substantively unconscionable, but it is neither. Virtually all consumer contracts are ones of adhesion. Gonzalez-Torres does not even attempt to carry his burden to present evidence of unconscionability specific to his own circumstances. For example, even though Gonzalez-Torres' realtor apparently preferred to use Zumper for listings and tenant background checks,

1

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Gonzalez-Torres presents no evidence that he had no choice of realtors or even that he requested that his realtor check his background through a different platform, but the realtor refused. To the contrary, as noted, Gonzalez-Torres made repeated requests for credit reports and background checks through the Zumper site over several months despite complaints over accuracy.

Contrary to Gonzalez-Torres' unsupported assertion, but as in any contract, Zumper's arbitration clause is no less binding because it appears in § 14 of the parties' agreement rather than § 1. Furthermore, there is no requirement, as Gonzalez-Torres suggests, that Zumper permit customers to "opt out" of the arbitration clause while retaining access to its services. His options were, among other things, to choose a different means of ordering a background check or use a different realtor. Nor was Zumper obligated to attach the (periodically updated) Commercial Rules of the American Arbitration Association to the agreement, especially when it clearly identified the AAA website (www.adr.org) where they may be found on the front page, and Gonzalez-Torres makes no argument that at any of those rules are unfair. Consumers such as Gonzalez-Torres who use the internet to procure services cannot complain when digital vendors assume that they are capable of visiting other, identified websites.

Gonzalez-Torres' complaint that the arbitration clause narrowly excepts claims for injunctive relief that either party may have relating to intellectual property is truly a red herring, as the case involves no such claim. He presents no evidence that a customer could never bring such a claim, or that Zumper would have no potential claim against a customer other than one relating to intellectual property, such that the obligation to arbitrate is not truly mutual. In any case, putting aside whether California's requirement of "mutuality" survives preemption under the Federal Arbitration Act (it doesn't), the Ninth Circuit has upheld a broader intellectual property exclusion in a similar consumer arbitration clause.

Similarly irrelevant are the limitations on certain types of damages in the agreement, which is used for realtors and landlords as well as prospective tenants who use the Zumper website. In language that Gonzalez-Torres omits, the agreement specifically notes that these limitations may not apply to him. Whether they ultimately do will be determined under

2

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

governing law as decided by the arbitrator, who specifically "shall have authority to issue any and all remedies authorized by law." Indeed, all of Gonzalez-Torres' complaints about supposed unfairness in the agreement are misplaced because none go to the fairness of the arbitration clause itself, which is for these purposes deemed to be an independent agreement. Gonzalez-Torres makes no argument that the arbitrator cannot fairly decide his case, including, if necessary, abrogating any clause that the arbitrator might deem invalid.

Gonzalez-Torres' last gasp is to assert that, even if his claim is generally arbitrable, his demand for "public injunctive relief" under the California Consumer Credit Reporting Agencies Act is not. This is so, he contends, because Zumper's agreement purportedly prohibits the arbitrator from awarding such relief. But that is manifestly not so: as just noted, the agreement authorizes the arbitrator to issue "any and all remedies authorized by law," language that two decisions by this Court have concluded authorizes the arbitrator to issue public injunctive relief, but that was absent in the cases cited by Gonzalez-Torres. Zumper's agreement correspondingly lacks the limitation in other cases on which Gonzalez-Torres relies that precluded the arbitrator from awarding any relief other than to the individual claimant.

Whether the arbitrator has the authority under the agreement to award public injunctive relief is itself a question that the parties have clearly and unmistakably delegated to for the arbitrator himself or herself to decide. As set out in Zumper's opening brief, but as Gonzalez-Torres ignores, under controlling Ninth Circuit precedent, they did so by selecting the AAA commercial rules, which authorize the arbitrator to determine his or her own jurisdiction. While Zumper contends that public injunctive relief isn't even available under the California Consumer Credit Reporting Agencies Act (no court has held that it is), that too is a question for the arbitrator to decide, as is whether the facts might even warrant such relief.

In sum, under the Federal Arbitration Act, all claims and requests for relief in this case must be referred to arbitration, and all proceedings stayed.

3
Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

## Argument

### I. THE PLAINTIFF UNDISPUTEDLY AGREED TO ARBITRATE.

#### A. The Operative Facts Are Undisputed.

Gonzalez-Torres' opposition to Zumper's motion is notable more for what it does not say than what it does. This is so because Gonzalez-Torres does not dispute that, as set out in Zumper's opening brief (Dkt. #24) and the supporting declaration of Brian Coyne (Dkt. #24-1):

- Gonzalez-Torres created an account with Zumper on its website;
- that to do so he clicked on a button directly adjacent to a notice that doing so indicated agreement to Zumper's "Terms and Conditions";
- that the words "Terms and Conditions" were, in that sentence, in a blue hyperlink;
- that the same hyperlink appeared at the bottom of every page on the website;
- that clicking the hyperlink would take users such as Gonzalez-Torres to a document captioned "Terms of Use";
- that such document also referred to itself as "terms and conditions"; and
- that it included an arbitration clause covering the claims in the present lawsuit.

In unsuccessfully seeking leave to take discovery in support of his opposition to arbitration, Gonzalez-Torres added by declaration (Dkt. #26-2) only that he saw an additional and separate set of terms, which related specifically to his ordering of credit reports on multiple occasions after he had created a Zumper account (the text is in ¶ 5 of his declaration). But the fact that Gonzalez-Torres remembers seeing the additional terms relating to credit reports, but does not now recall seeing the general terms – which he does not dispute were available for his review when he was specifically notified that creating an account constituted agreement to them – does not create a dispute of fact. In denying discovery, the Court properly held that, if a prima facie agreement to arbitrate is shown, the burden shifts to the plaintiff to "unequivocally deny" having made the agreement, but that Gonzalez-Torres "does not make" an argument that "he was in fact never presented" with the agreement to arbitrate. Order (Dkt. #30) at 4 (July 25, 2019); *Loewen v. Lyft, Inc.*, 2015 U.S. Dist. LEXIS 191445, at *16 (N.D. Cal. (Jun 12, 2015).

4

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Nothing has changed since that ruling.  Gonzalez-Torres now provides no supplement to his prior affidavit.  Instead, he has filed a declaration (Dkt. #32-1) of one Maria Battle, whose relationship to the case is not explained.  Her declaration (at ¶ 2) expressly relates to her own visit to the Zumper website in May 2019, after this lawsuit was filed, not to Gonzalez-Torres' experience when he visited the website in February, May, and July of 2018, and on which his suit is based.  It should accordingly be disregarded as irrelevant.

### B. Gonzalez-Torres' Arguments Based on the Undisputed Facts Are Meritless.

In any event, Ms. Battle's declaration is not actually inconsistent with that of Zumper's Mr. Coyne, so the operative facts remain undisputed.  Using Ms. Battle's declaration and in part his own, Gonzalez-Torres makes three points.

> 1. <u>Any choice not to click on the hyperlinked terms and conditions does not negate the making of the contract.</u>

Gonzalez-Torres' evidence at most shows that he may not have clicked on the hyperlinked terms, because he "does not recall" being presented with the arbitration clause in their § 14.  To the extent that it might be relevant (it isn't), Battle asserts that she was "not presented with the 'Terms of Use.'"  Battle Decl. ¶¶ 3-4.  But, charitably put, this statement reflects no more than artful drafting and a crabbed interpretation of the word "presented."  The declaration of Zumper's Mr. Coyne is clear that the user must create an account by clicking a button above a disclosure stating that creating an account indicates acceptance of Zumper's terms, and that to view those terms, the user had to click the hyperlinked words "Terms and Conditions."  Doing so took the user to the terms including the arbitration clause.  Dkt. #24-1, ¶¶ 15-17, 39.  Critically, ***Battle and Gonzalez-Torres deny none of these facts***, and specifically do not deny that they saw the webpage as depicted in ¶ 11 of Mr. Coyne's declaration (Dkt. #24-1).  The substance of Battle's testimony is thus merely that, since she apparently chose not to click on the hyperlink, she was not "presented" with the terms in the sense of actually viewing them.

Even assuming that Gonzalez-Torres chose not to click on the "Terms and Conditions"

5

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

hyperlink does not mean that there was no contract. As set out in Zumper's initial brief at pages 12-22, the question is whether Gonzalez-Torres had "reasonable notice" of the terms and manifested assent (as by clicking to create an account), not whether he actually read them. *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164 (N.D. Cal. 2016), *citing Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014). Gonzalez-Torres has not addressed that body of law. Nor has he denied the facts constituting his agreement with Zumper at all, much less done so "unequivocally."

### 2. The caption of the terms does not negate the making of the agreement.

Gonzalez-Torres' second argument is that, while the sentence on the page for creating an account read "By agreeing to a Zumper account you indicate your acceptance of our Terms and Conditions and Privacy," the blue hyperlinked words "Terms and Conditions" in that sentence, if clicked, took the user to a document that bore the title "Terms of Use." Though he implies some sort of ensuing confusion, Gonzales-Torres neglects to mention that the third sentence of the first paragraph of that "Terms of Use" document referred to "the following terms and conditions." Coyne Decl. (Dkt. #24-1), Exs. C, D. (As Zumper raised this point in its successful opposition to Gonzalez-Torres' administrative motion to take discovery, Dkt. #29 at 4-5, his failure to address it here is telling.) In fact, Gonzalez-Torres makes no argument that he was actually confused whether the Terms of Use document reached by clicking on the "Terms and Conditions" hyperlink in the sentence stating that there was agreement to terms and conditions indeed set out those terms to which he was agreeing; it obviously did. Gonzalez-Torres also fails to address the authority cited in Zumper's opening brief (Dkt. #24 at 19) noting that the making of a contract is determined not only by linguistic parsing of the words on the website, but also the context and flow of the account creation process. *See Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 80 (2d Cir. 2017)(although warning language next to clickable button did not align exactly with language on register button itself, "the physical proximity of the notice to the register button and the placement of the language in the registration flow make clear to the user that the linked terms pertain to the action the user is about to take.")(applying California law); *Selden v. Airbnb,*

6

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

*Inc.*, 2016 U.S. Dist. LEXIS 150863 at *15 (D.D.C. Nov. 1, 2016)("the prevalence of online contracting in contemporary society lends general support to the Court's conclusion that Selden was on notice that he was entering a contract…."); *Nicosia v. Amazon.com, Inc.*, 2019 U.S. Dist. LEXIS 100162, *51 (E.D.N.Y. June 14, 2019)(general public is or should be aware of website contracting without regard to specific wording and placement of disclosures).

Gonzalez-Torres instead relies upon a case outside the context of e-commerce, *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594 (N.D. Cal. 2007). In that case, residential borrowers signed multiple agreements at a real estate loan closing. One separate document, entitled "Addendum," contained an arbitration clause, but it was unclear as to which of the multiple agreements signed at closing the "Addendum" pertained. Furthermore, the arbitration clause was in the text deemed "optional." 505 F. Supp. 2d at 602. By contrast, in the present case, the binding arbitration clause in § 14 of the terms explicitly covered Zumper's defined "Services," which specifically included, as provided in the last paragraph of § 7 of the same agreement, the ordering of "background investigations regarding your criminal and eviction history," the very activity at issue in this case. Zumper has so argued at pages 24-25 of its opening brief, but Gonzales-Torres has yet again not offered any rebuttal. There is no confusion as in *Maganallez*. Gonzalez-Torres' citation to a case, *Pierson v. Helmerich & Payne Internat. Drilling Co.*, 4 Cal. App. 5th 608 (2016), in which no agreement was inferred from conduct without a writing, is completely inapposite. Also irrelevant is Gonzalez-Torres' citation (p. 3) to *Nygaard v. Prop. Damage Appraisers, Inc.*, 2019 U.S. App. LEXIS 23586 (9th Cir. August 7, 2019), in which the court held that there was no meeting of the minds on the arbitration clause due to ambiguity as to the venue of the arbitration. Here Gonzalez-Torres does not identify any ambiguity as to venue or any other aspect of the arbitration clause, the interpretation of which is in any event delegated to the arbitrator as discussed below.

      3. <u>Gonzalez-Torres' agreement to additional terms specific to his order of a credit report does not negate his agreement to arbitrate.</u>

Lastly, Gonzalez-Torres points to the fact that he agreed to additional terms that specifically related to his order of a credit report, which he characterizes (p. 3) without support as

7

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

"competing" with the general terms to which he agreed when he earlier created his Zumper account. But nothing in those terms, which are accurately set out in paragraph 5 of his declaration (Dkt. #26-2), *see also* Second Declaration of Brian Coyne (Dkt. #29-3), ¶ 5, purports to amend, nullify, or supersede the general agreement that he had made moments earlier when he created the account. That agreement, as noted, specifically included the ordering of such reports and background checks within the Services covered by the arbitration clause. Coyne Decl. (Dkt. #24-1), Exs. C, D, § 7 (last paragraph). Furthermore, review of the additional terms reveals that they are all specific to his optional order of credit reports, which not all website users make, Second Coyne Decl. (Dkt. #29-3), ¶ 5, so it would be unreasonable for him to assume that they somehow supplanted the general terms to which he had just agreed. Furthermore, it is undisputed that a hyperlink to Zumper's general terms and conditions document, which included the arbitration clause, was present at the bottom of every page of the website. Coyne Decl. (Dkt. #24-1), ¶ 17. (Notably, Gonzalez-Torres does not include a screenshot of the entire page depicting the scrollbox of additional terms and conditions for credit reports, which would have shown the hyperlink to the general terms including the arbitration clause.) It would make no sense to suppose that on the page where Gonzalez-Torres agreed to terms for the ordering of credit reports, Zumper was somehow abandoning a set of terms that was hyperlinked at the bottom of that very page. And of course Gonzalez-Torres himself claims no understanding that it was. Gonzalez-Torres Decl. (Dkt. #26-2), ¶ 2.

It is true that the website flow displays the additional terms for credit reports in a scroll box, while the general terms including the arbitration clause may be viewed only by clicking on a hyperlink. This is hardly surprising given the relatively much greater length of the general terms, which cover the parties' overall relationship rather than one specific aspect. (Doubtless Gonzalez-Torres would complain if the general terms were also in a scrollbox, as the scrolling would take a great deal of time.) Yet Gonzalez-Torres cites no authority for the proposition that subsequent agreement to additional terms in a different format implicitly negates an earlier

8

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

agreement. Nor does he explain how consumer interests would be advanced by requiring retailers endlessly to repeat all clauses of prior agreements to avoid such an inference.

For the unrebutted reasons stating in the opening brief, the parties agreed to arbitrate.

## II. PLAINTIFF'S AGREEMENT TO ARBITRATE WAS NOT UNCONSCIONABLE.

### A. Gonzalez-Torres Bears the Burden to Prove Procedural and Substantive Unconscionability.

Recognizing that he likely agreed to arbitrate, Gonzalez-Torres next argues that he should not be held to his agreement on the theory that it was unconscionable. But to sustain this defense he bears the burden of proving supporting facts. *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1260 (9th Cir. 2017). And he must prove that the agreement to arbitrate was, at least to some degree, both procedurally and substantively unconscionable. Gonzalez-Torres does not even attempt to carry his burden to prove facts demonstrating that either is so.

### B. There Was No Procedural Unconscionability.

#### 1. There was no unconscionable use of a contract of adhesion.

Gonzalez-Torres' first sally is to suggest (p. 5) that Zumper's contract is procedurally unconscionable merely because it is not negotiated with consumers individually, and therefore is a contract of adhesion. (He complains at p. 7 that Zumper retains the right to change the terms of the agreement, but fails to clarify that this right relates to amendments that are prospective only. Coyne Decl. Exs. C, D, § 2.) "[B]ut the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011). "*Concepcion*…pushes against finding that an adhesive contract, without more, is per se procedurally unconscionable." *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1161 (N.D. Cal. 2012). Gonzalez-Torres quotes (p. 10) *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015), as stating that the "adhesive nature…is sufficient to establish some degree of procedural unconscionability," but omits the key word preceding that excerpt: "here." In *Sanchez*, the dealership customer was given a stack of papers to sign with no opportunity to read them. 61 Cal. 4th at 909. In this case, Zumper put no time pressure on

9

Gonzalez-Torres' opportunity to review the terms. Indeed, about two hours passed between the time when Gonzalez-Torres created his Zumper account and when ordered a credit report and background check. Coyne Decl. (Dkt. #24-1), ¶ 24. "The California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon*, 846 F.3d at 1261; *see also Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)(giving mandatory employment agreement lesser scrutiny because there was no surprise).

Against that backdrop, Gonzalez-Torres makes no effort to show any "oppression" or "surprise" in his own particular circumstances. While his own realtor allegedly directed him to the Zumper website, Complaint ¶ 36, there is no evidence supporting the statement in his brief (pp. 11-12) that he was so directed "as the only way to obtain the housing that met his criteria." Both from the actual evidentiary record, not to mention common knowledge, Gonzalez-Torres was free to use another realtor or other rental realty websites. *Contrast Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1026 (N.D. Cal. 2008)(no competitor for then "breakthrough product"). There is no evidence even that his own realtor or the prospective landlords would not have used another background check service if requested. As noted, Gonzalez-Torres voluntarily chose to return to the site even after complaints about accuracy in his criminal history report. Cmplt. ¶¶ 60-62; Coyne Decl. (Dkt. #24-1), ¶ 27.

2. <u>Gonzalez-Torres' other procedural objections are unsupported makeweights.</u>

Gonzalez-Torres cites no authority for his suggestion (p.7) that Zumper's arbitration clause was unconscionable because it did not offer him the opportunity to "opt out" and obtain Zumper's services without agreeing to it. Such a clause might be important if Zumper's terms were presented after the parties had already agreed to transact, as in *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013)(three-week delay after hiring), but that is not the case here: Gonzalez-Torres could not have ordered a credit history and background check without first having created an account and thereby agreed to Zumper's terms, including arbitration. Coyne Decl. (Dkt. #24-1), ¶ 4.

10

Gonzalez-Torres complains (p.7) that he was "not directly shown" Zumper's general terms and conditions, but he could have clicked on them. He cites no authority that use of hyperlinks is unconscionable, and he ignores the numerous cases cited in Zumper's opening brief approving such use. He further complains (*id.*) that Zumper "did nothing to highlight" the arbitration clause, which appears in § 14 of 16 sections of the agreement. But "nor was [Zumper] required to specifically call that clause to [his] attention." *Sanchez*, 61 Cal. 4th at 914. All clauses of the agreement are as enforceable as the first, and, although it didn't need to do so, Zumper's first section, in the first sentence of the second paragraph, in fact admonished users to "Please read this Agreement carefully before you start to use the Website." Coyne Decl. Exs, C, D., § 1.

Gonzalez-Torres' procedural complaint (pp.7-8) that the agreement didn't attach the rules under which any arbitration would be conducted is nonsensical and contrary to controlling authority. The agreement provides that arbitration will be governed by American Arbitration Association Commercial rules "then in effect (for information on the AAA and its rules, see www.adr.org) and further procedures set forth therein." Coyne Decl. Exs. C,D, § 14. AAA rules and procedures are updated from time to time, and may easily be reached from the front page of the AAA website, www.adr.org, without "searching." Parties engaged in e-commerce may reasonably be presumed competent to locate a website when given its URL address, and Gonzalez-Torres had unlimited time for prior review. Under a California Supreme Court decision post-dating Gonzalez-Torres' (inapposite) district court authorities,[1] the plaintiff may not attack the absence of the arbitration rules from the agreement when, as here, the plaintiff

---

[1] *Vargas v. Delivery Outsourcing, LLC*, 2016 U.S. Dist. LEXIS 32634 (N.D. Cal. Mar. 14, 2016)(not considering whether employee challenged the arbitration rules and finding employee had insufficient time to review the agreement); *Colvin v. NASDAQ OMX Grp., Inc.*, 2015 U.S. Dist. LEXIS 149932, *12 (N.D. Cal. Nov. 4, 2015)(finding "limited" procedural unconscionability where employee had "to search for the rules" and, in contrast to Zumper's specification of the Commercial Arbitration Rules, defendant had not specified which rules applied); *Cisneros v. Am. Gen. Fin. Services, Inc.*, 2012 U.S. Dist. LEXIS 102948 (N.D. Cal. July 24, 2012)(defendant had Spanish speaker with 4th grade education sign English document referring to NAF rules).

11

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

does not challenge any of those rules as themselves unfair. *Baltazar*, 62 Cal. 4th at 1246; *Pereyra v. Guaranteed Rate Co.*, 2019 U.S. Dist. LEXIS 108940, *12 (N.D. Cal. June 28, 2019).

### C. The Agreement Is Not Substantively Unconscionable.

Even if use of a form contract in and of itself had one drop of procedural unconscionability, Gonzalez-Torres' assertions that the agreement to arbitrate is substantively unconscionable are specious.

#### 1. The agreement does not eliminate any public injunction remedy.

Gonzalez-Torres first argues that the agreement is substantively unconscionable on the ground that it supposedly eliminates the ability to seek injunctive relief on behalf of the general public. As demonstrated below, it does not do so, but the Court need not be detained because, as also argued below, whether it does is a question of interpretation that the parties have clearly and unmistakably delegated to the arbitrator to decide.

#### 2. The intellectual property injunction exception does not invalidate the arbitration clause.

Zumper's arbitration clause broadly makes all disputes "arising out of or relating to" the agreement, the website, or Zumper's services subject to arbitration. There is a narrow exception permitting the parties to seek "injunctive or other equitable relief" "to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights." Coyne Decl. Exs. C, D, § 14. Gonzalez-Torres asserts (p. 13) that this exception is so "one-sided" that it renders the obligation to arbitrate unilateral rather than mutual. Yet the Ninth Circuit has upheld an even broader intellectual property exception to a consumer arbitration clause, in recognition of the rule, also now acknowledged by the California Supreme Court, that arbitration may not be treated as an inferior means of dispute resolution. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030-31 (9th Cir. 2016). (Indeed, any mutuality requirement under state law is preempted by the Federal

12

Arbitration Act because it is not a rule that applies to contract clauses generally.[2])  Furthermore, even applying prior California law, Gonzalez-Torres provides no evidence, and thus does not carry his burden, to show that no user would ever seek an intellectual property injunction against Zumper.  The agreement in fact shows the opposite, as it specifically addresses user assignment of intellectual property rights to Zumper. Coyne Decl. (Dkt. #24-1), Exs. C, D, § 10.  And Gonzalez-Torres doesn't even argue that Zumper likely has no claims that it might ever make against a user in arbitration.  The arbitration clause need not be mutual but in any case is.

        3. <u>The limitations on damages are subject to legal exceptions and do not relate to the arbitral process.</u>

Gonzalez-Torres complains (pp. 9-10) that § 11.f of Zumper's terms include a sentence excluding recovery of  "incidental, special, consequential, indirect, punitive, or special damages," and that an alternative clause limits recovery to fees received within the preceding six months (contrary to his assertion, this is not a "statute of limitations").  Gonzalez-Torres overlooks the fact that the agreement is made with all website users, including landlords and realtors as well as prospective tenants such as himself.  That is why the very same section, in language that Gonzalez-Torres omits, goes on to say:

> SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF WARRANTIES OR OF LIABILITY, SO SOME OF THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.

Coyne Decl. (Dkt.#24-1), Exs. C, D, § 11.f.  It will be for the arbitrator to decide whether, under governing law, any of the exclusions even applies.  What is appropriate for a business-to-business relationship may or may not be as to a consumer.

Even if the agreement somehow excluded a potential recovery in a way that is contrary to

---

[2] *See THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014) (FAA preempts defense based on non-mutuality of remedies because "[a] court may not invalidate an arbitration agreement on the ground that arbitration is an inferior means of dispute resolution"); *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 76-77 (1st Cir. 2011) (FAA would preempt requirement "that both parties to a contract have identical remedies" if applied only to arbitration agreements); *Southeastern Stud & Components, Inc. v. American Eagle*, 588 F.3d 963, 966-67 (8th Cir. 2009) (holding Arkansas law requiring mutuality of obligation within arbitration agreement was preempted by FAA).

13

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

law (it does not), such an exclusion in no way would negate Gonzalez-Torres' obligation to arbitrate. This is so because his complaints go to terms of the agreement separate and distinct from the obligation to arbitrate. He does not argue that there is anything in the arbitration clause itself that is unfair, or that there is anything that would prevent the arbitrator appointed under that clause from fairly deciding his case. The arbitration clause must be treated as an independent agreement. "If the plaintiff does not specifically and directly challenge the precise agreement to arbitrate at issue, a court must treat the arbitration agreement as valid under section 2 [of the Federal Arbitration Act] and enforce it, thereby letting the arbitrator decide questions as to the validity of other provisions in the first instance." *Tompkins*, 840 F.3d at 1032 (internal quotation omitted; *citing Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010), and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)). In this case, the arbitrator has the express power to "issue any all remedies authorized by law." Coyne Decl. (Dkt. #24-1), Exs. C, D, § 14. This means that he or she may, as warranted, abrogate any illegal clause in the agreement other than relating to the arbitration process itself. These points also dispatch Gonzales-Torres' argument (pp. 10-11) that a supposed pervasive illegality requires the court to invalidate the entire agreement, including the arbitration clause.

### III. THE ARBITRATOR MUST DETERMINE WHETHER HE OR SHE IS AUTHORIZED TO ISSUE PUBLIC INJUNCTIVE RELIEF, WHETHER IT IS AVAILABLE, AND IF SO WHETHER IT IS WARRANTED.

Gonzales-Torres' final argument (pp. 11-14) is that Zumper's terms somehow foreclose what he asserts (p. 12) is "public injunctive relief under the [California Consumer Credit Reporting Agencies Act]." In fact, Zumper's terms do no such thing: to repeat, they expressly empower the arbitrator to "issue any and all remedies authorized by law." Coyne Decl. (Dkt. #24-1), Exs. C, D, § 14. Such language permits the arbitrator to award public injunctive relief. *See Dornaus v. Best Buy Co., Inc.*, 2019 U.S. Dist. LEXIS 24522, *8 (N.D. Cal. February 14, 2019)("a contract compelling arbitration of a claim seeking a remedy of public injunctive relief that allows the arbitrator to award such relief is valid and enforceable under *McGill*"); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018)(holding

14

Case No. 4:19-cv-2183-PJH
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

arbitration agreement providing "the Arbitrator may award all remedies" allows award of public injunctive relief). That language was not present in the decisions on which Gonzalez-Torres relies, *Dornaus* and *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019). Conversely, Zumper's terms lack the clause in both of those cases precluding any relief in favor of anyone other than the claimant. *See Blair*, 928 F.3d at 831 (arbitrator prohibited from awarding "relief that would affect RAC account holders other than you"); *Dornaus*, 2019 U.S. Dist. LEXIS 24522 at *4 (arbitrator "may award relief only on an individual basis"). The agreement's requirement of individual "adjudication" is not inconsistent with public injunctive "relief" and the prohibition on private attorney general claims, which he has not made. Under *Blair*, nor is it inconsistent with the waiver of class proceedings. 928 F.3d at 829-30.

But this is not even an issue for this Court to decide. As Zumper set out in its opening brief (Dkt. # 24 at 24), by adopting the AAA rules, under which the arbitrator is authorized to determine his own jurisdiction, Coyne Decl. (Dkt.24-1), Ex. E, Rule 7(a), the parties have clearly and unmistakably delegated interpretation of the scope of the arbitration clause to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. 2017); *Devries v. Experian Info. Sols., Inc.*, 2017 U.S. Dist. LEXIS 84255, at *7-8 (N.D. Cal. June 1, 2017)(question of authority to award public injunctive relief delegated to arbitrator). Gonzalez-Torres has not addressed this point. Furthermore, as *Blair* makes clear, public injunctive relief is susceptible of arbitration. 928 F.3d at 827. Zumper does not believe that public injunctive relief is available under the CCCRA (no court has held that it is, and the statute lacks provisions supporting the remedy in other statutes), but that will be a question for the arbitrator to decide. And, even assuming that such a remedy is legally available, the arbitrator would be the person to decide whether such relief is warranted under applicable facts and law. In sum, there is no aspect of the case for this Court to retain.

## CONCLUSION

For the reasons stated above and in Zumper's initial brief, the motion to compel arbitration and for stay (Dkt. #24) should be granted.

15

DATED: August 21, 2019               Respectfully submitted,

                                    By:   /s/ John A. Shope
                                          John A. Shope (admitted *pro hac vice*)
                                          Kevin J. Conroy (admitted *pro hac vice*)
                                          **FOLEY HOAG LLP**
                                          155 Seaport Boulevard
                                          Boston, MA 02210-2600
                                          Telephone: (617) 832-1000
                                          Facsimile: (617) 832-7000
                                          jshope@foleyhoag.com
                                          kjconroy@foleyhoag.com

                                          David M. Goldstein (SBN 142334)
                                          David C. Brownstein (SBN 141929)
                                          Charles R. Jaeger (SBN 171039)
                                          **FARMER BROWNSTEIN**
                                          **JAEGER & GOLDSTEIN LLP**
                                          235 Montgomery Street, Suite 835
                                          San Francisco, CA 94104
                                          Telephone: (415) 795-2050
                                          Facsimile: (415) 520-5678
                                          dgoldstein@fbj-law.com
                                          dbrownstein@fbj-law.com
                                          cjaeger@fbj-law.com

                                          Attorneys for Defendant Zumper, Inc.