UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ARMANDO GONZALEZ-TORRES,<br><br>Plaintiff,<br><br>v.<br><br>ZUMPER, INC.,<br><br>Defendant. | Case No. 19-cv-02183-PJH<br><br>**ORDER COMPELLING ARBITRATION AND STAYING ACTION**<br><br>Re: Dkt. No. 24 |

Defendant Zumper, Inc.'s ("Zumper") motion to compel arbitration and stay proceedings came on for hearing before this court on October 23, 2019. Plaintiff appeared through his counsel, Erika Heath. Defendant appeared through its counsel, David Goldstein and John Shope. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion, for the following reasons.

## BACKGROUND

On April 23, 2019, plaintiff Luis Armando Gonzalez-Torres filed a class-action complaint against Zumper, originating this action. Compl., Dkt. 1. Zumper operates a website that enables prospective renters to search and apply for apartment rentals, and allows landlords and realtors to evaluate and communicate with prospective tenants. Plaintiff signed up for and used the website as a prospective renter looking for an apartment to rent.

The complaint asserts seven causes of action: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), for failing to follow reasonable procedures

1  to assure the maximum possible accuracy of the information it reported about prospective
2  renters when preparing reports about them; (2) violation of California Consumer Credit
3  Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.14(b), based on the same
4  conduct; (3) violation of FCRA, 15 U.S.C. § 1681i(a)(1)(A), for failing to conduct a
5  reasonable reinvestigation to determine whether plaintiff's disputes about inaccuracies in
6  his record were accurate, or delete the disputed item within 30 days; (4) violation of
7  CCRAA, Cal. Civ. Code § 1785.16(a), based on the same conduct; (5) violation of FCRA,
8  15 U.S.C. § 1681j(f), for charging plaintiff more than the maximum allowable amount to
9  disclose all information in plaintiff's Zumper file; (6) violation of FCRA, 15 U.S.C.
10 § 1681g(a)(2), for failure to disclose to plaintiff the sources of the public record
11 information it includes in the Zumper file; and (7) violation of CCRAA, Cal. Civ. Code
12 § 1785.18(a), for the same conduct. See Compl.

On June 17, 2019, Zumper filed the present motion to compel arbitration and stay the action. Dkt. 24. Zumper argues that plaintiff and Zumper entered into an enforceable arbitration agreement encompassing plaintiff's claims when plaintiff created a Zumper account.

Gonzalez-Torres alleges that on or about February 27, 2018, he accessed Zumper's website and submitted a rental application. Compl. ¶¶ 34–38. Zumper's records align with that allegation and indicate that an individual with the name Luis Gonzalez created an account on February 27, 2018, and then submitted a rental application, including credit, criminal history, and eviction reports to a realtor. Declaration of Brian Coyne, Dkt. 24-1 ("First Coyne Decl.") ¶¶ 19–24.

Gonzalez-Torres alleges that Zumper published a consumer report that erroneously associated him with criminal offenses of an individual named Luis Raymond Gonzalez. Compl. ¶¶ 40, 43. Gonzalez-Torres alleges that this error was the result of Zumper's having used "very loose matching criteria" in preparing the report. Id. ¶ 44. Gonzalez-Torres alleges that his rental applications were denied and that the inaccuracy was a "substantial factor" in the denial. Id. ¶¶ 45–46. He further alleges that he

contacted Zumper to dispute the entry on his criminal history report, but that he did not receive an adequate response. Id. ¶¶ 48, 52–59.

A prospective Zumper user attempting to rent an apartment would begin the process by creating a Zumper account. Before doing so, the user views a notice informing him that by creating an account, he accepts Zumper's "Terms and Conditions." That phrase "Terms and Conditions" is a blue hyperlink. Neither party disputes these facts, nor that plaintiff viewed a screen with these elements before creating his account. See, e.g., First Coyne Decl. ¶¶ 4–17; Reply at 4 ("when a consumer such as Mr. Gonzalez-Torres creates a Zumper account" he does not agree to the linked-to document); Declaration of Maria Battle, Dkt. 32-1 ("Battle Decl.") ¶ 3 (plaintiff's witness describing website functioning after clicking "Create an account"). The screen looked approximately like this:



First Coyne Decl. ¶¶ 11–12 (the phrases "Terms and Conditions," "Privacy Policy," and "Sign In" are in blue, and are readily recognizable as hyperlinks).

The blue phrase "Terms and Conditions" linked to www.zumper.com/terms-of-use.

3

First Coyne Decl. ¶ 17. That document, as displayed at the relevant time (February 27, 2018), presented with a heading entitled "Terms of Use." Id. ¶¶ 36–39 & Ex. C (Exhibit C, filed at Dkt. 24-4, is the "Agreement") at ECF p. 2. Following that title, the first paragraph stated in part: "These terms of use are entered into by and between you and Zumper. The following terms and conditions, together with any documents they expressly incorporate by reference (collectively, the 'Agreement'), govern your access to and use of the Website and the Services, whether as a guest or a registered user." Agreement at ECF p. 2.

The Agreement later included the following provision, at Section 14 (entitled "Arbitration and Dispute Resolution"):

> All disputes arising out of or relating to this Agreement, the Website or the Services shall be resolved exclusively by binding arbitration before a single arbitrator (the "Arbitrator") in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") then in effect (for information on the AAA and its rules, see www.adr.org.) and the further procedures set forth herein, except that each party retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. The arbitration shall be conducted in San Francisco, California, unless the Arbitrator shall determine that that venue is not reasonably convenient to all parties, in which case the Arbitrator shall determine another venue that is. In the event that the AAA is unavailable or unwilling to administer the arbitration, and the parties are unable to agree to a substitute, a substitute shall be appointed by the court. The Arbitrator shall have authority to issue any and all remedies authorized by law. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 2 et seq. Notwithstanding any rules of the AAA to the contrary, any claims shall be adjudicated on an individual basis only, and YOU WAIVE ANY RIGHT TO BRING ANY CLAIM AS A REPRESENTATIVE OF A PROPOSED CLASS, ON AN AGGREGATED OR MASS BASIS, OR AS A PRIVATE ATTORNEY GENERAL, OR TO CONSOLIDATE ARBITRATION PROCEEDINGS WITHOUT THE CONSENT OF ALL PARTIES THERETO. Any award rendered by the Arbitrator shall be final, conclusive and binding upon the parties hereto. . . .

Id. § 14.

Subsequent to the account creation process, other materials were presented to

the website's users.  For example, the parties agree that to the extent a user was initially directed to Zumper to create an account from a realtor's referral link, after finishing the account creation process described above he would be presented with a pop-up screen entitled "Terms and Conditions," which displayed terms and conditions that a user agreed to "[b]y using Zumper[.]"  Third Declaration of Brian Coyne, Dkt. 39 ("Third Coyne Decl.") ¶¶ 10 & 15; Declaration of Luis Armando Gonzalez-Torres, Dkt. 26-2 ("Gonzalez-Torres Decl.") ¶¶ 2–4.  Plaintiff alleges that he was directed to create an account with Zumper through a realtor's referral link, and as such after creating an account he was presented with that "Terms and Conditions" pop-up screen.  Compl. ¶¶ 34–36; Battle Decl. ¶ 3; Third Coyne Decl. ¶ 15.

**DISCUSSION**

**A.   Legal Standard**

**1.   Motion to Compel Arbitration**

Under the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration.  9 U.S.C. §§ 3–4; see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (FAA applies to arbitration agreements in any contract affecting interstate commerce).  The FAA requires the court to compel arbitration of issues covered by the arbitration agreement.  Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

In ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable.  Lifescan., 363 F.3d at 1012; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answers are yes, the court must enforce the agreement.  Lifescan, 363 F.3d at 1012.

Regarding whether an agreement exists to arbitrate, the "first principle" that

5

1 underscores the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly 2 a matter of consent, and thus is a way to resolve those disputes—*but only those* 3 *disputes*—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l 4 B'hd of Teamsters, 561 U.S. 287, 299 (2010) (quotations and citations omitted); see also 5 First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may 6 order arbitration of a particular dispute only where the court is satisfied that the parties 7 agreed to arbitrate *that dispute*." Granite Rock, 561 U.S. at 297.

Regarding the validity of the agreement, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (state law defense, such as unconscionability, that applies to contracts generally may also invalidate an arbitration agreement). "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).

Regarding the scope of the agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

**2. Motion to Stay**

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such

6

1 suit or proceeding is referable to arbitration under such an agreement, shall on
2 application of one of the parties stay the trial of the action until such arbitration has been
3 had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3 (emphasis added).
4 Therefore, if the court has determined that the arbitration agreement is valid, and that the
5 dispute falls within its terms, the court must stay further proceedings pending arbitration.

**B.  Analysis**

First, plaintiff disputes that the parties formed an agreement to arbitrate. Second, he argues that if an agreement to arbitrate was formed, it is unconscionable. Third, he argues that if an enforceable arbitration agreement exists, he asserts claims that are not subject to arbitration. The court addresses each issue in turn.

**1.  Whether an Agreement to Arbitrate was Formed**

"While the FAA requires a writing, it does not require that the writing be signed by the parties." Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) (internal quotation marks omitted). "We 'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists.'" Norcia v. Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting First Options of Chi., Inc., 514 U.S. at 944). Here, the parties agree that California law governs the issue of contract formation. Mot. at 11; Opp. at 3, 5. "In discerning California law, we are bound by the decisions of the California Supreme Court, 'including reasoned dicta.'" Norcia, 845 F.3d at 1284 (quoting Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 219 (9th Cir. 2013)). "We generally will 'follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it.'" Id. (quoting Muniz, 738 F.3d at 219).

"Under California law, the petitioner bears the burden of proving the existence of an arbitration agreement by the preponderance of the evidence" (Perez v. Maid Brigade, Inc., Case No. 07-cv-3473-SI, 2007 WL 2990368, at *3 (N.D. Cal. Oct. 11, 2007)), "and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum, 55 Cal. 4th at 236. "A contract to arbitrate will not

7

be inferred absent a 'clear agreement.'" Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting Avery v. Integrated Healthcare Holdings, Inc., 218 Cal. App. 4th 50, 59 (2013)). "In California, a 'clear agreement' to arbitrate may be either express or implied in fact." Davis, 755 F.3d at 1093.

In California, "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." Reigelsperger v. Siller, 40 Cal. 4th 574, 579 (2007) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 116, p. 155). "[T]he terms of a contract ordinarily are to be determined by an external, not an internal, standard; the outward manifestation or expression of assent is the controlling factor." Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 992 (1972). "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court." Deleon v. Verizon Wireless, LLC, 207 Cal. App. 4th 800, 813 (2012).

When an offer is accepted, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." Norcia, 845 F.3d at 1284 (internal quotation marks omitted); Pinnacle Museum, 55 Cal. 4th at 236 ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."); Windsor Mills, 25 Cal. App. 3d at 992 ("an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains").

The parties do not dispute the relevant facts necessary to determine whether an agreement to arbitrate was formed. Because defendant was able to determine that plaintiff used a computer with the Windows 10 operating system to create his account, defendant was able to provide an image of the account creation window, shown above, as it would have appeared to plaintiff. See First Coyne Decl. ¶¶ 11–12 & 23. Plaintiff has not disputed the accuracy or relevance of that image.

8

United States District Court
Northern District of California

Plaintiff does not dispute that, before creating his account, he was presented with a link to "Terms and Conditions." See, e.g., Reply at 4; Battle Decl. ¶ 3; see also First Coyne Decl. ¶¶ 4–17. The same screen also provided that "By creating a Zumper account you indicate your acceptance of our Terms and Conditions and Privacy Policy." First Coyne Decl. ¶¶ 11 & 15. The entirety of the account creation window, including that text, was immediately visible and did not require any scrolling to read. Id. ¶¶ 11, 15. The words "Terms and Conditions" and "Privacy Policy" appeared in blue, indicating they were hyperlinks, whereas the rest of the sentence (including the word "and" between the two blue phrases) appeared in black. Id. ¶¶ 11, 16. The text "Terms and Conditions" linked to a document with a heading "Terms of Use" found at www.zumper.com/terms-of-use, where Gonzalez-Torres could have read Zumper's terms. Id. ¶¶ 17, 37. As they existed at the time plaintiff created his account, the terms included an arbitration agreement. Id. ¶¶ 36–39 & Ex. C. After being presented with that screen, Gonzalez-Torres created an account at 11:36 a.m. Pacific Standard Time, on February 27, 2018. Id. ¶¶ 7, 19, 22; Compl. ¶¶ 34–37.

Plaintiff does not dispute that under normal circumstances, the applicable principles of contract law dictate that those linked-to terms would be part of the contractual agreement. But plaintiff argues that defendant pulled a bait-and-switch, based on two features of Zumper's account-creation process.

First, the initial signup page indicated that the user was agreeing to "Terms and Conditions" (which was linked text), but if a user clicked on the link, he would have been brought to a document titled "Terms of Use." So, plaintiff argues that if someone clicked that link, it would not be clear whether he was agreeing to the terms in the linked-to document because its heading differed from the linked text.[1]

The Agreement's language here is clear, and the parties' actions evidence mutual

---

[1] Plaintiff's arguments are all asserted with respect to a hypothetical reasonable user, as he does not allege that he was actually confused, that he noticed the discrepancy in language, or even that he clicked on the "Terms and Conditions" link.

consent to the linked-to terms. The signup page clearly incorporates the linked-to terms, and although the heading is different from the linked text, a reasonable person reading that document would understand that it contained the terms agreed to when creating an account. To the extent plaintiff argues that a reasonable person would be confused by the Agreement's heading, it would require reading only to the third sentence to clarify that the document referred to its own contents as "terms and conditions." See Agreement at ECF p. 2. Plaintiff is not saved by declining to read the incorporated terms, because when an offer is accepted, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." Norcia, 845 F.3d at 1284 (internal quotation marks omitted).

Second, plaintiff argues that there was no mutual assent to the arbitration clause because, after the account creation process was complete, Zumper displayed a pop-up screen with the heading "Terms and Conditions." See Gonzalez-Torres Decl. ¶¶ 2–5; Battle Decl. ¶¶ 2–5; Third Coyne Decl. ¶¶ 5–6, 10 & 15 (explaining the website functioned this way for users who created an account using an invitation link from a realtor). Given the existence of that pop-up screen, plaintiff argues that it was ambiguous as to which set of terms the user agreed when creating his account. But by the time a user would have been presented with this new pop-up screen, the user would have already created an account and therefore have already entered into the Agreement, which included a provision requiring arbitration of certain disputes. Plaintiff's argument that these separate terms and conditions were presented simply alleges a separate contractual agreement. But plaintiff has not argued that the terms of this second agreement revoked or superseded the arbitration provision in the Agreement entered into during account creation.

For the foregoing reasons, the court finds that defendant has met its burden to establish that the Agreement—containing an arbitration provision—was entered into by the parties.

10

## 2. Whether the Agreement is Unconscionable

"Under California law, courts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may 'limit the application of any unconscionable clause.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340 (2011) (quoting Cal. Civ. Code § 1670.5(a)). "The party resisting arbitration bears the burden of proving unconscionability. Both procedural unconscionability and substantive unconscionability must be shown, but they need not be present in the same degree and are evaluated on a sliding scale. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Pinnacle Museum, 55 Cal. 4th at 247 (citations and internal quotation marks omitted).

"To determine whether the arbitration agreement is procedurally unconscionable the court must examine the manner in which the contract was negotiated and the circumstances of the parties at that time." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003) (internal quotation marks omitted). "[P]rocedural unconscionability requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice[.]" Pinnacle Museum, 55 Cal. 4th at 247 (citations and internal quotation marks omitted). "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract." Ingle, 328 F.3d at 1171. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Id.; Pinnacle Museum, 55 Cal. 4th at 247.

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to 'shock the conscience.'" Pinnacle Museum, 55 Cal. 4th at 246 (citations and internal quotation marks omitted). An arbitration

11

1 agreement must call for arbitration that "meet[s] certain minimum requirements, including
2 neutrality of the arbitrator, the provision of adequate discovery, a written decision that will
3 permit a limited form of judicial review, and limitations on the costs of arbitration." Craig
4 v. Brown & Root, Inc., 84 Cal. App. 4th 416, 422 (2000); accord Wherry v. Award, Inc.,
5 192 Cal. App. 4th 1242, 1248 (2011) ("To be valid, at minimum the arbitration agreement
6 must require a neutral arbitrator, sufficient discovery, and a written decision adequate
7 enough to allow judicial review.").

The court assumes without deciding that the Agreement was procedurally unconscionable.

Regarding substantive unconscionability, plaintiff does not challenge the Agreement based on any defect in the arbitration process that it requires. Specifically, plaintiff does not argue that the mandatory arbitration does not have a neutral arbitrator, adequate discovery, a reviewable written decision, or limitations on costs. See Craig, 84 Cal. App. 4th at 422. Instead, plaintiff raises four other challenges.

First, plaintiff argues that the Agreement eliminates the availability of public injunctive relief in any forum, in violation of the law. The Agreement does not do that, as discussed below.

Second, plaintiff argues the Agreement is not mutual because it allows all parties to litigate in court—rather than arbitrate—intellectual property disputes. Plaintiff concedes that term is facially mutual. But he argues that defendant is more likely than its contracting partners to originate intellectual property disputes, so in practical effect the term is not mutual. Here, it is speculative whether Zumper or those who enter into this Agreement by creating an account (which include realtors and other professionals) are more likely to originate an intellectual property dispute and/or benefit from this provision. Moreover, Zumper has a legitimate interest in protecting its intellectual property, and it is "entitled to an extra 'margin of safety' based on legitimate business needs." Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1031 (9th Cir. 2016). As such, the intellectual property

carve-out is not substantively unconscionable.[2]

Third, plaintiff argues that the Agreement generally—separate from the arbitration provision—does not allow for punitive or special damages. Defendant responds that the same section of the Agreement provides that "SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF WARRANTIES OR OF LIABILITY, SO SOME OF THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU." See Agreement §§ 11(f)–(g). Reading the section in its entirety, it provides for its own inapplicability in jurisdictions where it would limit statutorily-imposed damages and as a result be unconscionable. As such, this provision does not render the Agreement unconscionable.

Fourth, plaintiff argues that given the above-argued substantive problems in combination, the entire Agreement should be deemed unenforceable rather than excise any offending provisions.

"Civil Code section 1670.5, subdivision (a) provides that '[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.'" Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 121–22 (2000) (quoting Cal. Civ. Proc. Code. § 1670.5(a)). "Thus, the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." Id. at 122. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or

---

[2] To the extent it is unconscionable, the provision could be deemed unenforceable with no effect on the present dispute.

13

1 restriction, then such severance and restriction are appropriate." Id. at 124.

2 Here, to the extent there are unconscionable provisions, they are discrete, easily excisable, and do not concern the central purpose of the Agreement. As such, even if any of the provisions plaintiff has identified were in fact unconscionable (none of which relate to arbitration of this non-intellectual-property-based dispute), the court would excise them rather than render the entire Agreement unenforceable.

For the foregoing reasons, the Agreement is not unconscionable.

### 3. Whether Claims for Public Injunctive Relief Can be Arbitrated

Plaintiff argues that he asserts claims for public injunctive relief, which the arbitration agreement does not allow to be arbitrated. Defendant argues that the Agreement allows the arbitrator to award public injunctive relief.

State contract defenses may invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc., 517 U.S. at 687. Contracts that prevent all adjudication of public injunctive relief—in any forum—are impermissible under California law. McGill, 2 Cal. 5th at 961 ("insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law"). That includes contracts that compel all claims to arbitration, yet only allow an arbitrator to award relief affecting the individual who brought the claim. See id.; Dornaus v. Best Buy Co., Case No. 18-cv-04085-PJH, 2019 WL 632957, at *4 (N.D. Cal. Feb. 14, 2019) (arbitrator "may award relief only on an individual basis"); Blair v. Rent-A-Ctr., Inc., Case No. 17-cv-02335-WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) ("the arbitrator was prohibited from 'award[ing] relief that would affect RAC account holders other than [the customer]'"). However, a contract compelling arbitration of a claim seeking a remedy of public injunctive relief that allows the arbitrator to award such relief is valid and enforceable under McGill. See Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018).

Here, the Agreement requires that "[a]ll disputes arising out of or relating to this Agreement, the Website or the Services shall be resolved exclusively by binding

14

arbitration before a single arbitrator[.]" Agreement § 14.  That term unambiguously requires that all disputes be resolved exclusively in arbitration (except, as discussed above, intellectual property disputes).

Next, the Agreement provides that "The Arbitrator shall have authority to issue any and all remedies authorized by law."  Id.  The Agreement also provides that "any claims shall be adjudicated on an individual basis only, and YOU WAIVE ANY RIGHT TO BRING ANY CLAIM AS A REPRESENTATIVE OF A PROPOSED CLASS, ON AN AGGREGATED OR MASS BASIS, OR AS A PRIVATE ATTORNEY GENERAL, OR TO CONSOLIDATE ARBITRATION PROCEEDINGS WITHOUT THE CONSENT OF ALL PARTIES THERETO."  Id.  Read together, those terms provide that claims must be brought and arbitrated individually, and the arbitrator may award "any and all remedies authorized by law"—including public injunctive relief—when adjudicating those individually-asserted claims.  Although a plaintiff may not assert claims on behalf of a class in arbitration, the Agreement does not prohibit plaintiff from being awarded public injunctive relief as a remedy for his individually-asserted claims in arbitration.  As such, the Agreement does not prevent plaintiff from obtaining public injunctive relief in any forum.

## CONCLUSION

For the foregoing reasons, plaintiff is COMPELLED TO ARBITRATE HIS CLAIMS AGAINST ZUMPER in accordance with this order.  The entire action is hereby STAYED until such arbitration has been had in accordance with the terms of the Agreement, in accordance with 9 U.S.C. § 3.

**IT IS SO ORDERED.**

Dated:  December 2, 2019

                                                /s/ Phyllis J. Hamilton
                                                PHYLLIS J. HAMILTON
                                                United States District Judge